UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-cv-00207-LLK

ROBERT ALLEN GREENWELL                                                                              PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and the Commissioner are at Doc. 18 and Doc. 24. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 14].

Plaintiff makes ten arguments.[1] Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, this Opinion will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's decision**

The ALJ concluded that Plaintiff was not disabled through the April 10, 2020 decision date. [Administrative Record, Doc. 13 at 32]. In support, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 15, 2018, when he alleges that he became disabled. *Id.* at 20. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments: degenerative disc disease, abdominal hernias, a seizure disorder, obesity, depression, and

---

[1] Plaintiff was represented by different counsel before the administration.

1

anxiety. *Id.* at 20. Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 21.

As in any case that advances beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC). The ALJ found that, notwithstanding his degenerative disc disease, abdominal hernias, a seizure disorder, obesity, Plaintiff can:

> … perform light work as defined in 20 CFR 404.1567(b) except he should never climb ladders … can occasionally perform other postural activities … should avoid concentrated exposure to vibration … should avoid even moderate exposure to hazards such as unprotected heights or moving/dangerous machinery … should avoid even moderate exposure to extreme heat … should not drive motor vehicles … has full use of the right hand … has no ability to perform tasks utilizing a pincher grip of the left hand … cannot handle small objects with the left hand.

[Doc. 13 at 22-23]. The ALJ found that, notwithstanding his depression and anxiety, Plaintiff can:

> … perform simple, routine, repetitive work tasks, meaning tasks which apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form with the ability to deal with problems involving several concrete variables in or from standardized situations … cannot manage detailed written instructions, but he can manage simple written instructions … can occasionally interact with coworkers and supervisors … cannot maintain sustained interaction with the general public … should not work in a fast-paced or production-based work environment, but he can do entry level or goal-oriented work.

*Id.* at 22.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 30. Fifth, the ALJ found that Plaintiff can perform a significant number of unskilled, light jobs in the national economy such as sorter, cleaner, and parts cleaner. *Id.* at 31-32.

### Overview of Plaintiff's first, second, and third arguments

Plaintiff had a "nearly total amputation of his left [nondominant] thumb approximately 20 years ago." [Doc. 18 at PageID.1036]. Plaintiff's first, second, and third arguments related the vocational impact of his missing thumb on his ability to perform unskilled, light work.

The ALJ found that Plaintiff was not disabled through the April 10, 2020 decision date. [Doc. 13 at 32]. The ALJ cited Rule 202.11 of Appendix 2 of the regulations as a framework for decision making. *Id.* at 31. Rule 202.11 contemplates, among other things, a maximum sustained work capability limited to

light work. The corresponding rules for an individual limited to sedentary work are Rules 201.11 and 201.12, and they direct an ultimate finding of "disabled." Therefore, it is of case-dispositive significance whether Plaintiff has a residual functional capacity (RFC) for sedentary or light work.

The primary differences between sedentary and light work are: 1) Sedentary work generally requires sitting for 6 hours per 8-hour workday (with standing/walking allowed during the remaining 2 hours), and light work generally requires standing/walking for 6 hours per 8-hour workday (with sitting allowed during the remaining 2 hours); and 2) Unskilled light work generally requires use of the arms and hands to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. Social Security Ruling (SSR) 83-10, 1983 WL 31251, *5-6. It is the second difference that is of primary relevance in the present case.

Plaintiff's position is that his missing thumb made it impossible for him to grasp, hold, and turn objects, thus precluding light work and requiring an ultimate finding of disability pursuant to direct application of Rules 201.11 and/or 201.12.

**Plaintiff's first argument is unpersuasive.**

First, Plaintiff argues (speculates) that, while the ALJ found that he cannot "perform tasks utilizing a pincher grip of the left hand … cannot handle small objects with the left hand," "[i]t is logical that a person missing a thumb" would have additional, vocationally-significant limitations. [Doc. 18 at PageID.1045]. Specifically, Plaintiff suggests that "a person … unable to make a pinching motion would also not be able to grasp or handle, as such would require the use of a thumb to stabilize, grip, and /or clasp any object … would be one limiting all handling, holding, grasping, picking and pinching with the nondominant hand." *Id.*

The argument is unpersuasive for two reasons.

First, while it may be logical that Plaintiff would have additional limitations, there is no indication that those additional limitations preclude his ability to perform a limited range of unskilled, sedentary

3

jobs. On the contrary, in *Bosely v. Commissioner*, the Sixth Circuit affirmed the ALJ's finding that Bosely, who was right-handed and had a partial amputation of the left thumb, could perform a significant number of unskilled, light jobs in the national economy. *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195 (6th Cir. 2010). Bosely was "right handed and his right hand is fully functional," and he could "complete certain tasks with his left hand, even though he was not capable of any heavy gripping." *Id.* at *6. Like Bosely, Plaintiff has an amputated left, non-dominant thumb. The ALJs in both cases found that the claimants could perform some unskilled, light jobs based on vocational testimony.

Second, Plaintiff testified at the administrative hearing regarding the functional impact of his missing thumb, e.g., difficulty keeping pace as a brick layer, buttoning clothing, opening packages, frustration folding laundry. [Doc. 13 at 63, 69-70]. According to Plaintiff, "[t]he ALJ struggled to articulate this restriction and asked [Plaintiff's counsel] for suggestions with respect to how to express this manipulative restriction," and the ALJ eventually "settled on, 'he has no ability to perform tasks utilizing a pincher grip of the left hand and he cannot handle small objects with the left hand.'" [Doc. 18 at PageID.1044 referencing Doc. 13 at 23]. While it may be logical that Plaintiff would have additional limitations that were not explicitly given to the VE, the fact remains that the VE was present at the hearing, heard all vocationally relevant information in the form of Plaintiff's testimony, and took that information into account in identifying three compatible unskilled, light jobs, which exist in significant numbers in the national economy.

**Plaintiff's second argument is unpersuasive.**

Second, Plaintiff argues that the ALJ erred in failing "to find … [his] missing left thumb, to be severe impairments [in the ALJ's written decision] though the ALJ acknowledges these as severe at the hearing of the matter." [Doc. 18 at PageID.1041 referencing hearing, Doc. 13 at 50 ("So our severe impairments are … the missing thumb, the limited reading.")].

4

In her written decision, the ALJ does not list missing thumb among Plaintiff's severe impairments. [Doc. 13 at 20]. The ALJ found, however, as an accommodation to the missing thumb, that Plaintiff cannot "perform tasks utilizing a pincher grip of the left hand … cannot handle small objects with the left hand." *Id.* at 22-23.

Where (as here), in determining a claimant's RFC, the ALJ took into account the combined effect of all severe and non-severe impairments (in this case, missing thumb), any error in not listing a particular impairment as severe was harmless. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) ("An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps.").

## Plaintiff's third argument is unpersuasive.

Third, Plaintiff argues that the ALJ erred when "the ALJ [found] the state agency opinion [which found no manipulative limitation] to be persuasive as to reaching the residual functional capacity for light work." [Doc. 18 at PageID.1047 referencing Doc. 13 at 29, 111].

The state agency program physicians, Stephen Kavka and Shakra Junejo, opined that Plaintiff has a physical RFC to perform light. In so finding, they found no manipulative limitation. In support, they cited, among other things, "5/5/2015 – x-ray of the left hand – normal." *Id.* at 94, 112. John Beasley, M.D., interpreted the 5/5/2015 x-ray as showing:

> A metallic wire is noted over the remaining aspect of the proximal phalanx of the thumb. The distal aspect of this bone and the distal phalanx have been resected.
>
> Sort tissue Swelling is suggested in the hand. No old hand radiographs are available for comparison.
>
> There are old healed fractures of the first and fifth metacarpal bones. No acute fracture is evident.
>
> *IMPRESSION: No acute bony abnormality is identified.*

[Doc. 13 at 374].

5

The ALJ did not find the state agency opinions of no manipulative limitation to be persuasive. Rather, the ALJ found that Plaintiff "has no ability to perform tasks utilizing a pincher grip of the left hand … cannot handle small objects with the left hand." [Doc. 13 at 23]. As in *Brown v. Commissioner*, Plaintiff's "argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing." *Brown v. Comm'r*, No. 3:19-CV-443-GNS-CHL, 2020 WL 7225456, at *10 (W.D. Ky. Aug. 5, 2020) (report adopted).

### Plaintiff's fourth argument is unpersuasive.

Plaintiff's fourth, fifth, sixth, and seventh arguments related to the vocational testimony. Fourth, Plaintiff argues that there are "apparent conflicts between the vocational testimony and the DOT [Dictionary of Occupational Titles]." [Doc. 18 at PageID.1047].

As noted above, the ALJ found that Plaintiff can perform a significant number of unskilled, light jobs in the national economy such as sorter, cleaner, and parts cleaner. [Doc. 13 at 31-32]. These jobs are listed in the Dictionary of Occupational Titles (DOT) at sections 222.687-014, 323.687-014, and 726.687-010, respectively. *Id.* According to Plaintiff, the jobs "require handling small objects with both hands according to the DOT," yet the ALJ's controlling vocational hypothetical "specifies that [Plaintiff] is unable to handle small objects with the left hand." [Doc. 18 at PageID.1047, 1050].

The argument is unpersuasive for two reasons.

First, Plaintiff identifies nothing in the DOT job descriptions that is necessarily inconsistent with Plaintiff's manipulative abilities and limitations as described at the administrative hearing (including laying brick, with difficulty keeping pace).

Second, while the jobs in question may generally require handling of small objects with both hands, the VE's testimony was tailored to a subset of those jobs that accommodated Plaintiff's specific manipulative limitations and abilities (about which Plaintiff testified in the VE's presence).

### Plaintiff's fifth argument is unpersuasive.

6

Fifth, Plaintiff argues that "[t]he jobs that were identified [sorter, cleaner, parts cleaner] represent less than one percent of all light jobs in the national economy." [Doc. 18 at PageID.1051].

The VE testified that, in the national economy, there are 31,600 sorters, 168,000 cleaners, and 37,000 parts cleaners. [Doc. 13 at 32, 77]. On cross examination, Plaintiff asked the VE "[a]bout what percentage of the overall unskilled light work in the United States would those [three jobs] represent," and the VE responded "less than one percent … I think it's a very limited number of jobs available." *Id.* at 81. The VE explained that her testimony was based, in part, on her own professional observations that, with respect to the three unskilled, light jobs in question, "the major function is being done by the dominant hand but a worker can use either hand to perform that job." *Id.* at 79.

20 C.F.R. 404.1566(a) provides:

(a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether –

(1) Work exists in the immediate area in which you live;

(2) A specific job vacancy exists for you; or

(3) You would be hired if you applied for work.

20 C.F.R. § 404.1566(a). "[W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." *Buckman v. Comm'r*, No. 4:20-CV-00085-HBB, 2022 WL 615027, at *6 (W.D. Ky. Mar. 2, 2022) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Plaintiff does not allege that the number of jobs identified by the VE was insignificant. Therefore, it is immaterial that the number represents a small percentage of the total number of unskilled, light jobs in the national economy.

**Plaintiff's sixth argument is unpersuasive.**

Sixth, Plaintiff argues that there is inconsistency between the requirements of the three jobs identified by the VE as described in the Dictionary of Occupational Titles (DOT) and as described in the

7

Department of Labor's more current database known as the Occupational Information Network (O*NET). [Doc. 18 at PageID.1048]. In *O'Neal v. Commissioner*, 799 F. App'x 313 (6th Cir. 2020), O'Neal made a similar argument. "Because the DOT continues to be recognized as a source of reliable job information and [Plaintiff] did not cross-examine the vocational expert [in light of the O*NET] when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that [Plaintiff] was able to perform work that existed in significant numbers in the national economy." *Id.* at 318.

### Plaintiff's seventh argument is unpersuasive.

Seventh, Plaintiff argues that "the vocational witness [VE] relies on US Publishing which is a source not deemed acceptable by the regulations or POMS [the Commissioner's Program Operations Manual System]" 25015.030. [Doc. 18 at PageID.1051].

The VE indicated that he based his job numbers on a combination of DOT, US Publishing data, and professional observations. [Doc. 13 at 80-81]. Contrary to Plaintiff's suggestion, the POMS 25015.030 does not mention US Publishing – much less indicate that it is an unreliable source. Plaintiff cites and this Opinion finds no authority indicating that it was improper for the VE to base job numbers on the combination of factors identified above.

### Plaintiff's eighth argument is unpersuasive.

Plaintiff's eighth and ninth arguments related to his limited reading ability. Eighth, Plaintiff argues that the ALJ erred in failing "to find [his] limited reading ability … to be severe impairments [in the ALJ's written decision] though the ALJ acknowledges these as severe at the hearing of the matter." [Doc. 18 at PageID.1041 referencing hearing, Doc. 13 at 50 ("So our severe impairments are … the missing thumb, the limited reading.")].

In her written decision, the ALJ does not list limited reading among Plaintiff's severe impairments. [Doc. 13 at 20]. The ALJ found, however, as an accommodation to his limited reading, that Plaintiff cannot

8

"manage detailed written instructions, but he can manage simple written instructions" and that the "limitations in his residual functional capacity include instructions that are oral or demonstrated" (but not written). *Id.* at 28.

Where (as here), in determining a claimant's RFC, the ALJ took into account the combined effect of all severe and non-severe impairments (in this case, limited reading), any error in not listing a particular impairment as severe was harmless. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) ("An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps.").

### Plaintiff's ninth argument is unpersuasive.

Ninth, Plaintiff argues that the ALJ's finding that he can perform "tasks which apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form with the ability to deal with problems involving several concrete variables in or from standardized situations" does not adequately accommodate his limited reading ability because "[t]his is a reasoning restriction, and not a restriction based on his [relative] inability to read." [Doc. 18 at PageID.1043].

The argument is unpersuasive because the ALJ also found that Plaintiff cannot "manage detailed written instructions, but he can manage simple written instructions" and that the "limitations in his residual functional capacity include instructions that are oral or demonstrated" (but not written). [Doc. 13 at 23, 28]. These restrictions were based on Plaintiff's limited reading ability.

### Plaintiff's tenth argument is unpersuasive.

Tenth, Plaintiff argues that the ALJ improperly discounted Dr. Kerrick's opinion of marked limitation because it was given "before Mr. Greenwell began treatment with a mental health professional later in the same year." [Doc. 18 at PageID.1047 referencing Doc. 13 at 30].

On January 25, 2019, Plaintiff was examined at the request of the Commissioner by licensed clinical psychologist, Sarah P. Kerrick, Psy.D. [Doc. 13 at 547, 552]. Dr. Kerrick opined, among other things,

9

that Plaintiff's mental impairments: 1) Do not significantly affect his ability to understand, remember, and carry out instructions; 2) Markedly affect his ability to perform at a consistent/reasonable pace without interruption from psychological symptoms; 3) Moderately to markedly affect his ability to interact with the public, supervisors, and co-workers; and 4) Markedly affect his ability to respond to changes/stress/pressures in a work environment. *Id.* at 552.

Contrary to Plaintiff's suggestion, the ALJ did **not** discount Dr. Kerrick's opinion of marked limitation simply because, at the time the opinion was given, Plaintiff was not receiving mental health treatment. Rather, the ALJ discounted the opinion because:

> The consultative examination was performed prior to the claimant seeking any mental health treatment. It wasn't until June 2019 that he was prescribed Lexapro and it wasn't until September 2019 that he saw a mental health professional. Treatment notes reflect some improvement and he is expected to continue to improve with mental health intervention. Furthermore, the claimant's mental status findings did not support marked limitations.

[Doc. 13 at 30].

**Order**

Because Plaintiff's ten arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

March 24, 2022

Lanny King, Magistrate Judge
United States District Court